UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY G. WILBERN, an individual, and WILBERN ENTERPRISES, LLC, an Illinois limited liability company, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 13 cv 03269 |
| CULVER FRANCHISING SYSTEM, INC., a Wisconsin corporation, | ) ) ) | **Judge Thomas M. Durkin** |
| Defendant. | ) | |

## CFSI'S MOTION FOR JUDGMENT AS A MATTER OF LAW AFTER CLOSE OF PLAINTIFFS' CASE

Defendant, CULVER FRANCHISING SYSTEM, INC. ("CFSI"), pursuant to Federal Rule of Civil Procedure 50, moves this Court for Judgment as a Matter of Law after Close of Plaintiffs' Case. In support thereof, CFSI states as follows:

I. **INTRODUCTION**

"So the Emperor went in procession under the rich canopy, and everyone in the streets said, 'How incomparable are the Emperor's new clothes! What a train he has to his mantle! How it fits him!' No one would let it be perceived that he could see nothing, for that would have shown that he was not fit for his office ..." (Anderson, H.C. and Burton, V.L., The Emperor's New Clothes (1949)).

In this supposed case of racial steering, the evidence reveals that the Plaintiffs' did little to express any desire for their sites and/or the Defendant did little more than question the wisdom of these sites. Certainly, the proposed sites were never rejected, and a "no" was never spoken. In this supposed case of racial discrimination, the evidence reveals no racial animus, no disparate treatment,

and no occasion where the Plaintiffs' race was even considered. It's amazing that the Plaintiffs' case has come this far, but now that the full extent of the lack of evidentiary support has been revealed, this is as far as it should go.

Plaintiffs, Michael Wilbern ("Mr. Wilbern) and Wilbern Enterprises, LLC ("Wilbern Enterprises"), collectively ("Plaintiffs"), brought claims against CFSI under 42 U.S.C. §1981 alleging that each was intentionally discriminated against by CFSI in a franchise relationship on account of their race. Mr. Wilbern claims that CFSI intentionally denied him the opportunity to open multiple Culver's restaurants on the South Side of Chicago. Wilbern Enterprises claims that CFSI intentionally injured its Culver's restaurant franchise in Franklin Park, Illinois. Plaintiffs have now presented all of the evidence in support of their claims to the jury and rested their case. Yet, Plaintiffs failed to provide a legally sufficient evidentiary basis for a reasonable jury to find in their favor by a preponderance of the evidence. Therefore, judgment as a matter of law in favor of CFSI is appropriate and should be granted.

## II.    LEGAL ANALYSIS

### A.  Section 1981 Standard

In order to establish a claim for racial discrimination under Section 1981, a plaintiff must show that he was the victim of *intentional* discrimination. McCalpine v. Foertsch, 870 F.2d 409, 414 (7th Cir. 1989)(emphasis added). The Supreme Court has stated that a plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Id. citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). At the trial stage, though, the burden-shifting process comes to an end, and the only question is whether the plaintiff has presented enough evidence to allow a rational jury to find that he was the victim of discrimination. Massey v. Blue Cross–Blue Shield of Ill., 226 F.3d 922, 925 (7th Cir. 2000).

2

B. <u>Judgment as a Matter of Law Standard</u>

Under Rule 50(a) of the Federal Rules of Civil Procedure, judgment as a matter of law is required when "a party has been fully heard on an issue and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [an] issue." Fed. R. Civ. P. § 50(a)(1). "A legally sufficient amount of evidence [...] must be more than a 'mere scintilla.'" <u>Massey</u>, 226 F.3d at 924. In addition, a plaintiff cannot get to a "jury if his only 'evidence' had been that defendants' witnesses were not worthy of belief. That would have made it a no-evidence case, and such a case a plaintiff must lose, because he has the burden of proof." <u>Millbrook v. IBP, Inc.</u>, 280 F.3d 1169, 1183 (7th Cir. 2002)(internal citations omitted). Rather, "to avoid a directed verdict or a JNOV, [...] plaintiff must offer substantial evidence to support the argument." <u>Id</u>.

"If, reviewing that evidence in the proper light, the nonmoving party did not introduce enough to support her claim, then judgment as a matter of law is correct." <u>Id</u>. (affirming judgment as a matter of law in favor of defendant where the evidence of racial discrimination in violation of Section 1981 that plaintiff presented at trial did not justify submitting the case to the jury); <u>McCalpine v. Foertsch</u>, 870 F.2d 409 (7th Cir. 1989)(finding judgment in favor of defendant accused of intentional racial discrimination as a matter of law proper); <u>Christensen v. Equitable Life Assurance Society of the United States</u>, 767 F.2d 340 (7th Cir. 1985)(finding judgment as a matter of law proper where the plaintiff's only evidence of pretext was a lawful program instituted by the employer).

A "motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2); <u>Greene v. Potter</u>, 557 F.3d 765, 767-768 (7th Cir. 2009) (affirming district court's order granting directed verdict in favor of Defendant employer in discrimination case where Plaintiff employee's evidence was insufficient to allow reasonable jury to

infer intentional discrimination). "The standards generally applicable to other motions for judgment as a matter of law apply in discrimination cases." <u>Massey</u>, 97 C 189, 1999 WL 703727, at *9 (N.D. Ill. Aug. 26, 1999), *aff'd sub nom.* <u>Massey</u>, 226 F.3d 922.

C. <u>Mr. Wilbern Has Failed to Provide Sufficient Evidence to Support a Verdict that CFSI Intentionally Treated Mr. Wilbern Differently on Account of His Race During the Site Selection Process.</u>

Mr. Wilbern claims disparate treatment by CFSI during the site selection process for his Culver's locations. "'Disparate treatment' means treating a person differently because of his race; it implies consciousness of race, and a purpose to use race as a decision-making tool." <u>S.-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors</u>, 935 F.2d 868, 883 (7th Cir. 1991) quoting <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324, 335 n. 15 (1977). "Proof of discriminatory motive is critical." <u>Id</u>.; *see also* <u>Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1529–30 (7th Cir.1990)</u> (finding that the mental element required in a steering case is the same as that required under 42 U.S.C. § 1981). However, the record at trial from Plaintiffs' case-in-chief is wholly devoid of evidence to support this claim and without such evidence judgment as a matter of law in favor of CFSI should follow.

In <u>Smith v. Molly Maid, Inc.</u>, the Court held that the franchisor did not discriminate against a black prospective franchisee by denying her a franchise because of her race in violation of Civil Rights Act provision mandating racial equality in contracting. 415 F. Supp. 2d 905, 915-916 (N.D. Ill. 2006). Rather, the Court found that the franchisor persuaded the prospective franchisee to take on larger territory than she desired, not for racial reasons, but from past experience that smaller territories were generally not viable. <u>Id</u>. at 910-911; 915-916. As such, the franchisor similarly treated the plaintiff on the issue of territory size. <u>Id</u>. In addition, the Court found that the franchisor terminated its relationship with the plaintiff, not because she was African American, but for financial

reasons. Id. at 912; 916. In addition, the fact that the franchisor remained willing to work with prospective franchisee if she could improve her financial situation was considered by the Court as contradicting the plaintiffs' claims of discrimination. Id. at 912. The Court granted judgment in favor of the franchisor and against the plaintiff on all three counts of her complaint. Id. at 917.

### i. The Evidence Shows that Mr. Wilbern Chose Franklin Park and Did Not Seriously Pursue Stony Island.

Mr. Wilbern claims that he was initially interested in putting his first Culver's restaurant at 95th and Stony Island, yet the evidence shows that he never seriously pursued the location and CFSI did not intentionally steer him away from it. This whole claim relies upon Mr. Wilbern's testimony, and nothing more. However, he has stated under oath that: 1) he sent CFSI a completed Business Plan for the Stony Island location to CFSI and that he actually never finished the Business Plan for Stony Island; 2) that he only had the Business Plan from Stony Island in hard copy form after completing it at the computer during his time at the Noblesville Culver's and that he had an electronic version from which he then saved over in drafting his Franklin Park Business Plan; 3) that he did not keep any Culver's related documents at his home and he found documents in his attic produced in this case; and 4) that he sent in an application for site approval for Stony Island and that he never sent a formal site approval application to CFSI.

Even taking the above facts in the light most favorable to Mr. Wilbern, the record is undisputed that Mr. Wilbern never obtained financing for the site, never obtained a loan commitment, never had CAD drawings created, never had a site sketch drawn, never had a survey completed, never applied for TIF incentives, never signed or forwarded a Letter of Intent, and never attempted to reserve a territory for a Stony Island site. Mr. Wilbern knew that he needed to request approval before moving forward with a site. Yet, no letters or e-mails or other communication between Mr. Wilbern and CFSI regarding his interest specifically in 95th and Stony Island are in

evidence. No letters or e-mails or other communication between Mr. Wilbern and the developer of 95th and Stony Island regarding his interest in this site are in evidence. Instead, the only evidence presented that may be argued in support of Mr. Wilbern's claim that CFSI steered him away from Stony Island is that Tom Goldsmith discussed potential negatives about the location with Mr. Wilbern. Yet, this sort of discussion is the same as Mr. Goldsmith did with white franchisees, as confirmed during the testimony of Guy Hollis and Justin Obriecht. Also, the record is clear that this sort of discussion is exactly what Mr. Goldsmith is supposed to do in his position as CSFI Director of Development. Mr. Wilbern admitted that he relied on Mr. Goldsmith's skills in site selection and that Mr. Goldsmith's role was to identify pros and cons of potential sites. Finally, the evidence is undisputed that CFSI never told Mr. Wilbern that he could not move forward with the Stony Island location. Both Mr. Wilbern himself and Mr. Goldsmith testified consistently on this point.

On the other hand, Mr. Wilbern completed a Franchise Application for Franklin Park, reserved a territory for Franklin Park, obtained financing for Franklin Park, and ultimately signed a Franchise Agreement for Franklin Park on behalf of Wilbern Enterprises. Mr. Wilbern in his own words wrote positive things about the Franklin Park location, both before and after the execution of the Franchise Agreement. (JX 18, DX 395). Furthermore, he admitted that *he* decided to open his first franchise in Franklin Park. Also, both Mr. Wilbern and Sandra Wilbern testified to being very excited when they executed the Franchise Agreement for Franklin Park. Accordingly, there is insufficient evidence to support an allegation that CFSI steered Mr. Wilbern away from the Stony Island location; rather, Mr. Wilbern chose Franklin Park.

Even if the Court finds there was sufficient evidence to support the proposition that Mr. Wilbern and/or Wilbern Enterprises was steered away from Stony Island, there is no evidence that it was racially motivated. To the contrary, Mr. Wilbern admitted that he believed that CFSI wanted to

serve people of all races. Also, Mr. Wilbern admitted that Craig Culver told him that CFSI was not afraid to go anywhere to build stores. Further, Mr. Wilbern admitted that CFSI never told him that Stony Island did not meet its standards for demographics. Nor does CFSI claim otherwise. Therefore, Plaintiffs have failed to show the critical evidence of discriminatory motive to support a racial steering claim against CSFI.

Accordingly, Mr. Wilbern's own testimony cannot combat the documented evidence and corresponding testimony presented. *See* <u>Denisi v. Dominick's Finer Foods, Inc.</u>, 99 F.3d 860 (7th Cir. 1996)(finding summary judgment proper where the plaintiff submitted only his own testimony in an attempt to combat documented evidence of his poor performance). There is no substantial evidence on which a reasonable jury could find that CFSI consciously used race as a decision-making tool and steered Mr. Wilbern away from Stony Island and towards Franklin Park. Judgment as a matter of law in favor of CFSI on Mr. Wilbern's claim that CFSI steered him from Stony Island should be granted.

### ii. The Evidence Shows that CFSI was Attempting to Help Mr. Wilbern Operate at the Marshfield Plaza Site.

Mr. Wilbern explored Marshfield Plaza for his potential second Culver's franchise. In contrast to Stony Island, Mr. Wilbern's efforts to bring a Culver's to this location are documented. However, the evidence also clearly establishes that CFSI was actively assisting Mr. Wilbern in these efforts. Specifically, Steve Haertel, CFSI site specialist, completed site sketches for a Culver's at Parcel 4 of Marshfield Plaza. (JX 73, DX 62, DX 63, DX 68, DX 105). Mr. Wilbern agreed that CFSI tried to make the location work even though the design was too large for the site. This is further corroborated in Mr. Wilbern's admission (in his responses to requests to admissions) that Mr. Haertel helped him in this way. (see DX267, paragraph 294). In addition, Mr. Wilbern has admitted that Steve Anderson, CFSI General Counsel, helped him in the negotiation of the Letter of

Intent and/or lease for Marshfield Plaza. (See DX267, paragraph 293). Mr. Wilbern also admitted during his cross examination, after being confronted with is video deposition testimony, that Tom Goldsmith, CFSI's Director of Development, was actually trying to get him approved for expansion at Marshfield Plaza.

Mr. Wilbern never filled out an application for TIF assistance and never obtained a loan commitment for the Marshfield Plaza site. Rather, in his negotiations with Primestor, the developer of Marshfield Plaza, the evidence is clear that Mr. Wilbern was unable to come to an agreement on various crucial terms. (DX 113). Although Mr. Wilbern testified to having submitted an application for Marshfield Plaza in 2008, there is no evidence to dispute CFSI's evidence that Mr. Wilbern failed to satisfy the conditions for expansion prior to September 2009, when he was approved to open and operate at Hillside.

Accordingly, it was around the same time, and even before the issues arose during negotiations for Marshfield Plaza, that Mr. Wilbern executed a Letter of Intent to purchase property at Hillside Town Center for a Culver's restaurant. (DX 87). He also completed an application to expand to Hillside. (JX 86, JX 82). Mr. Wilbern wrote positive things about the Hillside location prior to being approved for the site. (Id.) Mr. Wilbern knew that he needed to request approval to expand before moving forward with a site. However, Mr. Wilbern claims that he interpreted an email from Mr. Goldsmith telling him to "proceed cautiously" with the Marshfield Plaza site as Mr. Goldsmith telling him no and not giving him approval. (JX 35). This is a telling example of Mr. Wilbern's misinterpretation of Mr. Goldsmith's advice on how to move forward with expanding to the location. Ultimately, though, Mr. Wilbern admitted that Mr. Goldsmith was not pushing Hillside, but rather was trying to get him approved to expand to two new locations, one of which was Marshfield Plaza. Mr. Goldsmith testified that had Mr. Wilbern only sought approval for Marshfield

Plaza, he would have been approved. Instead, though, the evidence shows that Mr. Wilbern chose Hillside first and Marshfield Plaza second. Marshfield Plaza never came up again because Mr. Wilbern's poor financial health grew too large.

Mr. Wilbern should not be allowed to present his claim for CFSI steering him away from this location when he has testified that at least three CFSI individuals were helping him with the Marshfield Plaza location. The evidence in this case, and these critical admissions of Mr. Wilbern himself, are fatal to Mr. Wilbern's claim that CFSI was actively and intentionally steering him away from Marshfield Plaza. No reasonable jury could find that CFSI consciously steered Mr. Wilbern away from Marshfield Plaza.

Even if the Court finds there was sufficient evidence to support the proposition that Mr. Wilbern and/or Wilbern Enterprises was steered away from Marshfield Plaza, there is no evidence that CFSI's actions were racially motivated. To the contrary, Mr. Wilbern admitted that he believed that CFSI wanted to serve people of all races. Also, Mr. Wilbern admitted that Craig Culver told him that CFSI was not afraid to go anywhere to build stores. Further, Mr. Wilbern admitted that CFSI never told him that Marshfield Plaza did not meet its standards for demographics. Nor does CFSI claim otherwise. Therefore, Plaintiffs have failed to show the critical evidence of discriminatory motive to support a racial steering claim.

Accordingly, Mr. Wilbern's own testimony cannot combat the documented evidence and corresponding testimony presented. <u>Denisi</u>, 99 F.3d 860. Plaintiffs have failed to provide sufficient evidence that support a claim that CFSI steered Mr. Wilbern away from Marshfield Plaza, let alone that CFSI was consciously using Plaintiffs' race as a decision-making tool. No reasonable jury could find in favor of Plaintiffs' racial steering claim for Marshfield Plaza and judgment as a matter of law should be granted.

D. Plaintiffs Failed to Provide Sufficient Evidence of Lost Profits at Potential Locations.

Plaintiffs claim lost profits at the above-discussed hypothetical locations for Culver's restaurants at Stony Island and Marshfield Plaza. However, the fact of damages at Stony Island and Marshfield Plaza is uncertain because even when construing the facts in the light most favorable to Plaintiffs, the contention that either of the locations would have been opened at all is impressively speculative. As Dunn on Damages provides, "[t]he reasonable certainty rule applies only to the fact of damages, not the amount of damages. Proof of the fact of damages in a lost profits case means proof that there would have been some profits. If Plaintiff's proof leaves uncertain whether plaintiff would have made any profits at all, there can be no recovery." Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd., 100 F.3d 1353, 1367 (7th Cir. 1996). Overall, "the proof of the fact of damages must be certain." Id. Accordingly, a precursor to even contemplating lost profits at these potential locations would be Plaintiffs' ability to open them. This insufficiency of evidence is properly raised in a motion for judgment as a matter of law following the close of a plaintiffs' case in chief. Mid-Am Tablewares, 100 F.3d at 1363.

Here, Plaintiffs failed to provide sufficient evidence upon which a jury could find it reasonably certain that restaurant(s) at Stony Island and/or Marshfield Plaza would have opened, thus precluding any discussion on the corresponding lost profits. Plaintiffs' own expert, John Gordon, testified that Stony Island "could" have opened and only that it is "possible" that Marshfield Plaza would have been able to open. But, he never went so far as to opine that either location was likely or reasonably certain to open (in the absence of CFSI's purported refusal). In addition, there is no explanation of how Mr. Wilbern would address the outstanding issues that needed to be addressed prior to opening at Stony Island and/or Marshfield Plaza. Namely, Mr. Wilbern had not chosen a specific site in Stony Island, determined a price, obtained a loan

commitment, and/or began negotiating any sort of Letter of Intent. As for Marshfield Plaza, it still remains unknown how (or if) Mr. Wilbern would have been able to negotiate agreeable lease terms with the developer, Primestor. Consequently, Plaintiffs have failed to show sufficient evidence to support that either Stony Island or Marshfield Plaza would have actually opened.

Therefore, due to uncertainty in the fact of damages for these hypothetical locations, judgment as a matter of law in favor of CFSI on lost profits from Stony Island and/or Marshfield Plaza properly follows and is correct.

     E. <u>There are No Remaining Claims Because There is No Evidence of Intent and/or Any Adverse Treatment Based on Race.</u>

As previously discussed, in order to survive a motion for judgment as a matter of law after the close of a plaintiff's case, the plaintiff must present more than a "mere scintilla" of evidence in support of their claims that CFSI *intentionally* discriminated against them on account of their race. <u>Massey</u>, 226 F.3d at 924 (emphasis added). However, Plaintiffs have failed to do so related to the following claims and judgment in favor of CFSI on all of Plaintiffs' claims is appropriate. <u>McCalpine</u>, 870 F.2d 409; <u>Christensen</u>, 767 F.2d 340; <u>Aungst v. Westinghouse Electric Corp.</u>, 937 F.2d 1216 (7th Cir.1991)(affirming district court's decision granting defendant judgment as a matter of law because plaintiff failed to present sufficient evidence of pretext to sustain jury verdict of age discrimination); <u>Millbrook v. IBP, Inc.</u>, 280 F.3d 1169, 1183-84 (7th Cir. 2002)(in reversing a jury verdict and holding that the plaintiff failed to present sufficient evidence of intentional discrimination the Court discussed that even where a plaintiff shows a prima facie case, coupled with evidence of pretext, it is not always enough to satisfy the plaintiff's burden where no rational factfinder could conclude that the defendant's action was discriminatory).

Mr. Wilbern claims that CFSI steered him away from a site in Chatham Market. Aside from Plaintiff's own testimony, though, there is very little evidence in this case to show that he pursued a

location at Chatham Market, or that this pursuit, if any, was anything beyond cursory or exploratory. Wilbern admitted that he never had an architect look at the site, never had site sketches done, never had CAD drawings created, never obtained a survey, never obtained loan commitments or requested to reserve the territory. Further, the evidence shows that if a Culver's was brought to that location, TIF funds could not be used. (JX 25). Overall, there is no credible evidence upon which a reasonable jury could find that Mr. Wilbern seriously pursued Chatham Market, let alone that CFSI treated him differently during the site selection process and consciously used race as a decision-making tool in steering Mr. Wilbern away from Chatham Market.

Wilbern Enterprises claims that CFSI cannibalized the Franklin Park franchise by approving new Culver's restaurants to open in Lyons and Rosemont. Testimony in this case shows that each Culver's franchise has a protected 3 mile territory radius. However, it is undisputed that this protected radius around the Franklin Park franchise was not violated when Lyons (8 miles away) and Rosemont (5.6 miles away) opened. Further, there is testimony that CFSI has approved many other franchises to open in locations near franchises owned and operated by white franchisees which are closer than Lyons and Rosemont are to Franklin Park. Thus, even if CFSI offended a practice or policy of being concerned with cannibalization of an existing Culver's franchise, there is absolutely nothing in evidence on which a reasonably jury could find that CFSI treated Wilbern Enterprises differently through the Lyons and Rosemont decisions or that the decisions were intentionally made on the basis of Mr. Wilbern's and/or Wilbern Enterprises' race. This is especially true in light of the fact that CFSI has allowed franchises to open closer to white franchises on a consistent basis.

Wilbern Enterprises claimed CFSI failed to give financial support during Mr. Wilbern's attempt to purchase the Franklin Park restaurant. Yet, there is no evidence that the type of financial support being sought is a benefit of the franchise relationship. Further, there is no evidence that

CFSI treated Plaintiffs differently than other white franchisees on account of their race related to offering financial assistance.

Therefore, Plaintiffs have failed to introduce sufficient evidence to support their claims that CFSI intentionally discriminated against them with race-conscious decisions and judgment as a matter of law should be granted in favor of CSFI.

F.  Plaintiffs Have Failed to Provide Sufficient Evidence to Support a Punitive Damage Claim Because They Have Not Submitted Evidence of Evil Intent or Malice by CFSI.

In a Section 1981 case, a plaintiff must establish a prima facie case before he may seek punitive damages. As discussed above, Plaintiffs have failed to do so in their case-in-chief. Moreover, Plaintiffs have failed to show sufficient evidence to support a punitive damages claim upon which a reasonable jury could find in their favor.

The appropriate standard for availability of punitive damages is when "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Alexander v. City of Milwaukee, 474 F.3d 437, 453 (7th Cir. 2007); Williamson v. Handy Button Machine Co., 817 F.2d 1290, 1296 (7th Cir. 1987)(holding that the standard for punitive damages under Section 1983 was "equally applicable to Section 1981"). In a section 1981 action, a finding of liability for discrimination against a defendant does not automatically entitle the prevailing plaintiff to an award of punitive damages. Ramsey v. Am. Air Filter Co., Inc., 772 F.2d 1303, 1314 (7th Cir. 1985). Rather, such an award must be supported by the record. Id.

Here, there is not one shred of evidence that CFSI intentionally treated Plaintiffs differently due to their race, let alone with malice or in callous disregard for Plaintiffs' rights. Without this

evidence a reasonable jury has no legally sufficient basis on which to find in favor of Plaintiffs on the issue of punitive damages. Therefore, judgment in favor of CFSI as a matter of law is warranted.

Overall, as a matter of law, there is no substantial evidence to support a verdict for Plaintiffs on their claims of intentional discrimination in violation of Section 1981 and judgment in favor of CFSI should be granted.

**WHEREFORE**, Defendant, CULVER FRANCHISING SYSTEMS INC., requests this Honorable Court to enter judgment in its favor and against Plaintiffs, MICHAEL WILBERN AND WILBERN ENTERPRISES LLC, as a matter of law after the close of Plaintiffs' case and for further relief as this Court deems just and proper.

Respectfully Submitted,

CULVER FRANCHISING SYSTEM, INC.

By: ____/s/ Alan L. Farkas_____
            Attorneys for Defendant

Larry Schechtman - 6186118
Alan L. Farkas - 6216036
SMITHAMUNDSEN LLC
150 North Michigan Avenue
Suite 3300
Chicago, Illinois   60601
(312) 894-3200

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on June 1, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Carmen D. Caruso
Shane Valenzi
CARMEN D. CARUSO LAW FIRM
77 West Washington Street, Suite 1900
Chicago, IL  60602
Telephone: (312) 626-1160
Facsimile: (312) 276-8646
Email: cdc@carusoroederlaw.com
Email: sdv@carusoroederlaw.com


Linda C. Chatman
Chatman Law Offices, LLC
Two Prudential Plaza
180 N. Stetson Avenue, Suite 3500
Chicago, IL 60601
Telephone: (312) 917-1005
Email: lindachatman@chatmanlaw.com

          /s/ Alan L. Farkas
          One of Defendant's Attorneys
          SmithAmundsen
          150 N. Michigan Avenue, Suite 3300
          Chicago, Illinois 60601
          Phone: (312) 894-3200
          Fax: (312) 894-3210
          Email: afarkas@salawus.com